United States District Court
Northern District of Indiana

JASON R. CRAIG, )
)
          Plaintiff, )
) Civil Action No. 2:13-CV-92 JVB
v. )
)
DAVID LANE, *et al.*, )
)
          Defendants. )

**OPINION AND ORDER**

Jason R. Craig, a *pro se* prisoner, filed an amended complaint under 42 U.S.C. § 1983. (DE 9.) Pursuant to 28 U.S.C. § 1915A, the Court must review a complaint filed by a prisoner and dismiss it if the action is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(a), (b). To survive dismissal, the complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 603. In other words, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). Nevertheless, a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Here, Craig complains that while he was detained at the Porter County Jail, he was denied proper medical care and dental care, and denied his First Amendment right of access to the courts. The Court addresses each claim in turn.

## I. Medical Care

According to the complaint, when Craig arrived at the jail on September 13, 2012, he was under the care of doctors and taking six different medications for depression, anxiety, and pain due to sciatica. Upon his arrival, Medical Director Kimberly House informed him that all of his medications would be immediately terminated, and that if he wanted to receive any medications at the jail he needed to see the jail doctor. Craig informed her he needed to see the doctor right away, because he would go into withdrawal if his medications were terminated. She responded that he had to wait to see the doctor until he "got into population" and submitted a health care request. The following day Craig became severely ill with withdrawal symptoms, and "was vomiting profusely, shaking, and sweating badly." Over the next few days he experienced visual hallucinations, suffered an anxiety attack, went to the bathroom on himself, and could not eat, drink, or sleep. He told two jail nurses, Dawn Martin and Cashan Walker, that he needed immediate medical care, but their only response was that they were aware of what he was going through and to try to "drink water."

On September 18, 2012, Craig spoke with Nurse Martin outside his cell and told her he was "violently ill." He "pleaded" with her to see the doctor or be taken to the hospital. He told her he had lost about 15 pounds since he arrived at the jail and could not even hold down liquids. She "made some notations on a paper" and left. A few days later, Craig was finally provided with the necessary form to request medical care, which he completed and submitted. Nurse Walker responded that he had been placed on the list to see the doctor.

On September 25, 2012, Craig was taken to see the jail physician, Dr. Alshami (first name unknown). Craig told the doctor he was experiencing severe pain from sciatica, felt

depressed, had lost a significant amount of weight, was hallucinating, and was experiencing severe withdrawal due to the discontinuation of his medications. Dr. Alshami placed him in on "the lowest produced dose" of a tranquilizer, thorazine, which Craig felt did not feel adequately address his pain or depression.

On October 6, 2012, Craig submitted another health care request complaining that he was depressed, unable to sleep, and had "thoughts of death and dying and hopelessness." He also complained of severe pain and cramps in his lower back and right leg. Nurse Walker responded that he was being referred to the doctor. On October 9, 2012, Craig was seen by Dr. Alshami, but the doctor allegedly "took no action" on any of his medical complaints and refused to provide him with any additional treatment.

On December 20, 2012, Craig submitted a request to be placed on an antidepressant. Nurse Walker responded that he would have to see the doctor. On January 3, 2013, he was seen by Dr. Alshami, and complained that he was severely depressed and was experiencing significant pain from sciatica, but the doctor allegedly refused to provide him any additional treatment. He was seen again by the doctor on January 17, 2013, and Craig asked to be able to have his medications "brought in," but the doctor told him "per policy" he could not do so. On January 30, 2013, Craig asked to see a psychiatrist or other mental health professional, and was told by Nurse Walker that his available option was to see the jail doctor.

On February 11, 2013, Craig met with John Widup, the jail warden, to complain about his medical care. The warden reportedly responded "he isn't a doctor, but he knew me and my history enough to know that these conditions are and have been in the past very troublesome for me." The warden then called Michelle Harris, a jail nurse, into the room and asked her to make

sure the doctor provided Craig with the necessary treatment. She responded "she could make no promises, but she will see." Per the warden's instruction, Craig submitted another written health care request.

Craig was seen again by Dr. Alshami on February 14, 2013, and the doctor adjusted his thorazine but did not provide any other treatment or medications. Craig continued to submit medical requests, and later wrote a letter to the warden telling him he still had not been provided proper treatment. He also complained that his mattress was inadequate and was aggravating his sciatica. Another jail staff member responded to his letter to the warden, telling him to fill out a medical request so that medical staff could determine whether he needed a different mattress for medical reasons. On February 19, 2013, Craig submitted a request stating that he was planning to file a federal lawsuit over his medical care. Nurse Harris directed him to the prison law library. Craig claims that to date, he still is not receiving adequate care for his mental health issues and his pain due to sciatica.

Inmates are entitled to adequate medical care under the Eighth Amendment.[1] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability the prisoner must show: (1) he or she had an objectively serious medical need; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that "a physician has diagnosed as mandating treatment or one that is so obvious that even a lay

---

[1] During these events, it appears Craig was both a pretrial detainee awaiting trial on various criminal charges, and also a convicted inmate serving a sentence. While he was a pretrial detainee the Fourteenth Amendment applied, whereas the Eighth Amendment applied while he was serving a sentence. *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009). The governing standards are functionally equivalent, and "anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment." *Id*.

person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

To be liable for deliberate indifference "the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations omitted). For a medical professional to be held liable for deliberate indifference, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Prisoners are not entitled to demand specific care, nor are they entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). By the same token, prison medical staff cannot simply continue with a course of treatment known to be ineffective. *Greeno*, 414 F.3d at 653. Non-medical prison staff members are ordinarily entitled to defer to medical staff regarding the provision of medical care; however, "nonmedical officials can be chargeable with the Eighth Amendment scienter requirement of deliberate indifference where they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008).

Here, taking Craig's allegations as true, he has alleged a serious medical need, specifically, depression, anxiety, and sciatica, for which he was under the care of doctors when he arrived at the jail. He alleges facts showing that Warden Widup, Nurse Harris, Medical Director House, Nurse Walker, Dr. Alshami, and Nurse Martin were personally aware of his medical problems, but delayed in providing treatment, which caused him significant pain and

5

suffering. He further alleges that he still has not been provided adequate treatment for his sciatica and mental health problems. Although Craig is not entitled to the medications of his choice or to demand specific types of care, he is entitled to care that adequately addresses his medical needs. Giving him the inferences to which he is entitled at this stage, Craig has alleged enough to proceed past the pleading stage against these defendants.

Craig also sues Advanced Correctional Healthcare ("ACH"), the private company that employs the medical staff at the jail, raising a policy claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). A private company performing a state function can be held liable to the same extent as a state actor under *Monell*. *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applied to private company providing medical care at prison). Here Craig claims the company has an unconstitutional policy or practice which prevents detainees who are on medication when they arrive at the jail from receiving prompt evaluation and treatment from the jail doctor. Craig further alleges that this policy directly injured him, causing him to experience nearly two weeks of painful withdrawal symptoms while he waited to see the jail doctor. Giving him the inferences to which he is entitled, he has alleged a plausible claim against ACH under *Monell*.

Craig also sues Porter County Sheriff David Lane, but does not allege that he had any personal involvement in these events. He appears to be trying to hold him liable under a *respondeat superior* theory, but the sheriff cannot be held liable under 42 U.S.C. § 1983 simply because he was oversaw operations at the jail. *See Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Craig has thus failed to allege a plausible claim against the sheriff in his individual capacity. However, Craig is also seeking injunctive relief pertaining to his current

medical care, and the sheriff would be a proper defendant in connection with that claim. *See Feit v. Ward*, 886 F.2d 848, 858 (7th Cir.1989) (proper defendants for purposes of claim for injunctive relief were supervisory officials of government agency). Accordingly, Craig will be permitted to proceed against the sheriff solely on a claim in his official capacity for injunctive relief in connection with Craig's current medical care.

## II. Dental Care

Craig next alleges that he was denied proper dental care at the jail. Specifically, he alleges that on December 15, 2012, he submitted a medical request for care due to a wisdom tooth that was "throbbing." He claims the gum around the tooth was also swollen and bleeding. Nurse Walker responded to his request and stated he would be placed on the list to see the dentist. Two weeks passed, during which time Craig had a difficult time eating and sleeping due to the pain in his tooth. He submitted a grievance to Captain Ron Taylor requesting medication for his tooth, but did not receive any response. On January 3, 2013, he was seen by Dr. Alshami for his other medical problems and told him he was experiencing severe tooth pain. The doctor refused to provide any treatment or medication, telling him he would have to see the dentist. Craig submitted another grievance, this time to Assistant Warden Ron Gaydos, complaining that he was not being properly treated for his tooth pain. He did not receive any response.

On January 17, 2013, he was seen again by Dr. Alshami for his other medical problems. He told the doctor he was still experiencing severe pain in his tooth, to which the doctor responded, "I thought I told you, you must see [the] dentist." Craig claims he told the doctor he had been on the list to see the dentist for over a month, but the doctor refused to give him any medication or other treatment for the tooth. Over the next ten days, Craig asked Nurse Walker

7

and Nurse Martin for help "each time they were passing meds in my pod." They reportedly told him they could not help him with his dental problem, but that he would "probably" be seeing the dentist soon. On January 27, 2013, Craig began refusing his food trays due to the pain in his tooth. On January 30, 2013, Warden Widup called him into his office to ask him why he was refusing his food trays. Craig told him what had occurred, and the warden said he would try to help him to see the dentist. Later that same day, another inmate gave Craig some salt he had received from the dentist, which he no longer needed. Craig began "packing" his tooth with salt "day and night." He repeatedly asked the nurses for Tylenol or ibuprofen when they were on his pod, but to no avail.

On February 8, 2013, Craig was finally seen by the dentist. He examined Craig's tooth and told him it appeared he was getting over an infection, but that there was no cavity. Craig explained how he had been packing the tooth in salt, and stated that it had eased his pain significantly. The dentist told him no action was needed at that point, but if the problem returned to submit another health care request. Craig claims that the delay in providing evaluation or treatment for his dental problem caused him significant pain and suffering.

As stated above, Craig has a right to adequate medical treatment, and this includes treatment for dental problems. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (tooth decay and serious tooth pain which ultimately required a root canal constituted objectively serious medical condition); *Farnham*, 394 F.3d at 480–81 n.4 (observing that tooth problems can lead to bacterial infections or coronary problems, either of which could cause serious injury or even death). Craig alleges that he had significant pain in his tooth for several weeks which interrupted his daily activities, and eventually made it impossible for him to eat. He further

alleges that Nurse Walker, Nurse Martin, Dr. Alshami, Warden Widup, Assistant Warden Gaydos, and Captain Taylor were personally aware of his need for dental care and delayed for several weeks in providing any treatment or evaluation. At this stage, he has alleged enough to proceed on a dental claim against these defendants.

### III. Access to the Courts

Finally, Craig alleges that his First Amendment right of access to the courts was violated during the pendency of this case. Specifically, he alleges that in April 2013, he was transferred to the segregation unit[2] and his legal papers, postage, and writing materials confiscated. He wrote several grievances seeking to have these items back, and was told by Captain Taylor that he could not have papers in his cell or send mail while he was in segregation. He later spoke with Warden Widup and was told the same thing, although the warden told him he could file documents in court if he felt his rights were being violated. Craig claims that he needed his legal papers to "study" for the trial in his criminal case scheduled in May 2013, and to prepare filings in this case. It appears from the complaint and attachments that he was released from segregation sometime around April 16, 2013.

Craig's allegations fail to state a plausible claim for relief. Although inmates have a First Amendment right of access to the courts, there is no "abstract free-standing right" to a law library or legal materials. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In other words, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access the courts, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of

---

[2] Craig states that he was found guilty in a jail disciplinary proceeding of possessing contraband and misusing medication. (DE 9 at 23.)

9

confinement has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Thus, to state a claim, an inmate must "spell out" the connection between the denial of access to legal materials and the resulting prejudice to a potentially meritorious challenge to his conviction, sentence, or the conditions under which he is being housed. *Id.* Furthermore, prison officials are permitted to adopt reasonable regulations for the safety and security of the facility, including regulating how and when inmates are allowed to access legal materials. *See Lewis*, 518 U.S. at 351-52; *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).

Here, Craig could not keep certain documents in his cell like he wanted, due to the fact that he was in segregation for disciplinary reasons. However, there is no indication he was denied all access to legal materials or suffered the type of prejudice that would be actionable under the First Amendment. Craig's complaint indicates he was able to file grievances while in segregation, and the docket in this case reflects that he was able to prepare and mail documents to the court. He did not miss any deadline or otherwise suffer prejudice in connection with this case. He also does not allege, nor can it be plausibly inferred, that he lost the ability to litigate a meritorious claim in his criminal case because he was unable to have certain documents in his cell during a two-week period. Accordingly, he will not be granted leave to proceed on this claim.

As a final matter, it appears from Craig's filings that two of the defendants, Kimberly House and Cashan Walker, may no longer be employed at the jail. If the jail refuses to accept service on their behalf, the U.S. Marshal's Service should obtain their last known address and serve them there, keeping this information confidential and out of the public record.

For the reasons set forth above, the Court:

(1) **GRANTS** the plaintiff leave to proceed against Michelle Harris, Cashan Walker, Dawn Martin, Kimberly House, Dr. Alshami, and John Widup in their individual capacities for compensatory and punitive damages for failing to provide him with adequate medical care;

(2) **GRANTS** the plaintiff leave to proceed against Cashan Walker, Dawn Martin, Dr. Alshami, John Widup, Ron Gaydos, and Ron Taylor in their individual capacities for compensatory and punitive damages for failing to provide him with adequate dental care;

(3) **GRANTS** the plaintiff leave to proceed against Advanced Correctional Health Care for maintaining an unconstitutional policy or practice prohibiting new arrivals at the jail who are on prescribed medications from obtaining prompt evaluation and treatment by a jail doctor for serious medical needs;

(4) **GRANTS** the plaintiff leave to proceed against Sheriff David Lane in his official capacity for injunctive relief related to the current medical care he is receiving for mental health problems and sciatica;

(5) **DISMISSES** any and all other claims contained in the complaint;

(6) **DIRECTS** the United States Marshals Service to effect service of process on Kimberly House, Michelle Harris, Dawn Martin, John Widup, Cashan Walker, Dr. Alshami, Ron Taylor, Ron Gaydos, David Lane, and Advanced Correctional Health Care; and

(7) **DIRECTS** the United States Marshals Service, in the event service cannot be effected on Kimberly House and Cashan Walker at the Porter County Jail, to obtain their last known addresses and serve them there, keeping this information confidential and out of the public record; and

(8) **ORDERS** Kimberly House, Michelle Harris, Dawn Martin, John Widup, Cashan Walker, Dr. Alshami, Ron Taylor, Ron Gaydos, David Lane, and Advanced Correctional Health Care to respond, as provided for in the FEDERAL RULES OF CIVIL PROCEDURE and N.D. IND. L.R. 10-1, only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED** on May 30, 2013.

    s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
Hammond Division