United States District Court
Northern District of Indiana

JASON R. CRAIG,           )
                          )
       Plaintiff,         )
                          )   Civil Action No.  2:13-CV-92 JVB
    v.                    )
                          )
DAVID LANE, *et al.*,     )
                          )
       Defendants.        )

**OPINION AND ORDER**

Jason R. Craig, a *pro se* prisoner, filed a motion for preliminary injunction and a motion to reconsider the screening order. (DE 16, 17.) The court addresses each in turn.

I.     Motion for Preliminary Injunction

In his motion for a preliminary injunction, Craig complains that he has serious medical problems that have been ignored since his arrival at the Porter County Jail, specifically, that he is not receiving adequate treatment for sciatica and mental health issues. (DE 17.) He moves for an order requiring David Lain (incorrectly sued as "David Lane"), the Sheriff of Porter County, to arrange for immediate "examinations and a plan of treatment by a qualified specialist in pain, and one in mental health," and to carry out whatever treatment they recommend. (DE 17-1 at 3.) Sheriff Lain has responded to the motion. (DE 28.) The deadline has passed for Craig to file a reply, and to date, none has been received. Instead, Craig filed a motion asking that the Sheriff be held in "contempt" for failing to file a timely response.[1] (DE 32.)  The Sheriff did file a timely response, however, so this motion will be denied.

---

[1] It appears that Craig's motion crossed in the mail with the Sheriff's response, which was mailed to Craig at the jail on July 1, 2013. (DE 28 at 15.) The court waited 14 days beyond the deadline for Craig's reply, but as stated none has been received, although he filed various documents pertaining to other issues during this period. (*See* DE 30, 31, 32, 33, 39.)

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To obtain preliminary injunctive relief, the moving party must demonstrate that he or she has a reasonable likelihood of success on the merits, lacks an adequate remedy at law, and will suffer irreparable harm if immediate relief is not granted. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

Under the Eighth Amendment, inmates are entitled to adequate medical care.[2] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citation omitted).

For a medical professional to be deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base

---

[2] The complaint reflects that during part of these events Craig was a pretrial detainee, during which time the Fourteenth rather than the Eighth Amendment applied. *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009). The governing standards are functionally equivalent, however, and "anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment." *Id*.

the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). A mere disagreement with medical professionals about the best course of treatment does not establish deliberate indifference, nor does negligence or even medical practice, since "the Eighth Amendment does not codify common law torts." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Moreover, prisoners are not entitled to demand specific types of medical care, nor are they entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Maggert v. Hanks*, 131 F.3d 670, 671-72 (7th Cir. 1997) ("A prison is not required by the Eighth Amendment to give a prisoner care that is as good as he would receive if he were a free person, let alone an affluent free person."). When an inmate has received some form of treatment for a medical condition, to establish deliberate indifference he must show that this treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Arnett*, 658 F.3d at 751.

Here, the evidence shows that upon Craig's arrival at the jail in September 2012, he reported to a nurse that he was on several medications: Thorazine, Xanax, Neurontin, Wellbutrin, Norco, Soma, and Cymbalta. (DE 28-2, Harris Aff. ¶ 10.) Nursing staff called several different pharmacies to confirm current prescriptions for these medications, and they were able to confirm all but the Neurontin. (*Id.*) Craig was later seen and prescribed Thorazine by the jail physician, Dr. Nadir Al-Shami, who diagnosed him with schizoid affective disorder and drug addiction.[3] (*Id.* ¶ 11.) Thorazine is a drug commonly used to treat schizophrenia and other psychotic disorders. (*Id.*) A few weeks later, Craig complained of some side effects from the Thorazine, including facial twitching,

---

[3] Jail medical records reflect that Craig has a history of heroin and cocaine abuse. (DE 28-2, Medical Records at 22, 33.) A few days after his arrival at the jail, a nurse noted that he appeared to be having withdrawal symptoms. (*Id.* at 8.) The doctor prescribed two medications to address his withdrawal symptoms, and he was also monitored by nursing staff twice a day during a five-day period. (*Id.*; DE 28-2, Harris Aff. ¶¶ 8-9.)

3

and also complained about back pain. (*Id.* ¶¶ 12-13.) On October 9, 2012, he was seen again by the doctor, who prescribed Artane to address the side effects of Thorazine. (*Id.* ¶ 13.) The doctor examined Craig's back but did not find any limitation in his range of motion. (*Id.*)

In January 2013, the doctor saw Craig again to assess his progress, and decided to change his medication from Thorazine to Haldol, an anti-psychotic medication also used to treat schizophrenia. (*Id.* ¶ 14.) His notes reflect that he also diagnosed Craig with a personality disorder. (*Id.*) A few weeks later Craig complained about side effects of Haldol, and in response Dr. Al-Shami ordered an increase in the Artane. (*Id.* ¶ 15.) Craig was seen again by the doctor in February 2013, and complained that he was not doing well on Haldol. (*Id.* ¶ 16.) The doctor put him back on Thorazine, and also prescribed Neurontin, an anti-inflammatory pain medication, to address what Craig described as shooting pains in his back. (*Id.*)

On March 4, 2013, Craig sent a letter to Sheriff Lain asking to be seen by a psychiatrist. (DE 28-1, Lain Aff. ¶ 3.) In response, on March 11, 2013, Craig was taken to be evaluated by an outside mental health provider, Porter Starke Services, Inc. ("PSS"). (*Id.* ¶ 4; DE 28-2, Harris Aff. ¶ 18.) A doctor at PSS recommended that Craig be treated with monthly injections of Risperdal, a powerful anti-psychotic medication. (DE 28-2, Harris Aff. ¶ 19.) The jail complied with that recommendation, and since that date Craig has been receiving regular injections of the drug. (*Id.*; DE 28-2, Medical Records at 9-21.)

In April 2013, Craig was seen again by Dr. Al-Shami and reported that he wanted the Neurontin increased due to increased pain in his back. (DE 28-2, Harris Aff. ¶ 17.) In response, Dr. Al-Shami increased the dosage. (*Id.*) Craig was seen again by Dr. Al-Shami in June 2013, and reported increased pain in his right leg and back, although the doctor's notes reflect that during his

4

assessment, Craig did not appear to be in acute distress. (*Id.* ¶ 18.) His diagnosis was sciatica, "chronic pain—not serious." (*Id.*) The doctor prescribed ibuprofen in addition to the Neurontin for pain. (*Id.*)

In May 2013, Craig was seen again by a doctor from PSS, who recommended that the Risperdal be continued, and that he also be given Wellbutrin. (*Id.* ¶ 20.) The jail complied with these recommendations and gave him the additional medication. (*Id.*) Craig was seen again at PSS on June 18, 2013, and it was determined that his Wellbutrin should be increased. (*Id.* ¶ 21.) The jail complied with this recommendation. (*Id.*)

As of July 1, 2013, the jail has a new medical care provider, Correctional Care Solutions ("CCS"), which will provide a registered nurse to be on duty 24 hours a day; licensed practical nurses to be on duty during day and evening hours; a nurse practitioner who will be at the jail twice a week; a mental health counselor who will be present at the jail 40 hours a week; and a physician and psychiatrist who will be on call 24 hours a day. (*Id.* ¶ 24; DE 28-1, Lain Aff. ¶¶ 5-7.) Craig will be receiving care from these providers during his remaining time at the jail. (DE 28-2, Lain Aff. ¶ 7.)

Based on the above, Craig has not demonstrated that he is entitled to the extraordinary remedy of a preliminary injunction. Far from establishing that his medical problems are being ignored, the record shows that he is presently under the care of medical professionals and is receiving several medications to address his health issues. Craig apparently disagrees with the medical judgments of these providers and believes they should be doing more for him. However, the Constitution does not entitle him to the medical treatment of his choice, nor does it entitle him to care that is good as he would receive if he were a free person, let alone an affluent free person. *Maggert*, 131 F.3d at 671-72; *Forbes*, 112 F.3d at 267. Based on the documents before the court,

Craig has not demonstrated that the treatment he is presently receiving is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Arnett*, 658 F.3d at 751. Accordingly, his motion for a preliminary injunction will be denied.

II. Motion to Reconsider

Craig also moves for reconsideration of the screening order, specifically, the dismissal of his claim alleging denial of access to the courts. (DE 16.) As was fully explained in the screening order, a prisoner can only proceed on a claim for denial of access to the courts if he identifies some prejudice to a potentially meritorious legal claim. *Lewis v. Casey*, 518 U.S. 343 (1996); *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Craig did not do so in his complaint, nor does he do so in the present motion.

If Craig's complaint left any doubt, his motion makes clear that he is complaining about a temporary lack of access to writing materials and the delay of his legal mail during a two-week period when he was housed in segregation for disciplinary reasons. (DE 16-1.) In his motion he argues that he was prejudiced by these conditions because the lack of writing materials caused him to file a "hastily prepared complaint" in this case. (DE 16-1 at 2.) The record belies this argument. Craig states that he was released from segregation on April 16, 2013 (DE 16-1 at 2), and his amended complaint was not due until May 1, 2013. (*See* DE 7.) He could have requested additional time to prepare his complaint if he felt it was needed, but he did not do so; instead he filed it on April 26, 2013, several days prior to the deadline. (DE 9.) This pleading cannot reasonably be characterized as "hastily prepared." It was 55 pages long with attachments, cogent, and highly detailed. Based on Craig's allegations, the court permitted him to proceed on claims against nine individual defendants, including the sheriff, and on a policy claim against the private company that

6

provided medical care at the jail. (DE 13.) Under these circumstances, Craig has not plausibly alleged that his right of access to the courts was denied. *See Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996) (inmate's ability to file current lawsuit demonstrated that his right of access to the courts had not been unlawfully infringed). In short, the court finds no basis in the motion to warrant reconsideration of the screening order.

For these reasons, the court:

(1) **DENIES** the motion for a preliminary injunction (DE 17);

(2) **DENIES** the motion for "contempt" (DE 32); and

(3) **DENIES** the motion to reconsider (DE 16).

**SO ORDERED** on July 25, 2013.

                                                        s/ Joseph S. Van Bokkelen
                                                      Joseph S. Van Bokkelen
                                                     United States District Judge
                                                     Hammond Division